# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| A. KEVIN FAHEY, *on behalf of himself and the General Public of the District of Columbia,* | x : : : : |
| *Plaintiff,* | : Civil Action No.: 19-cv-2128 (JDB) : |
| v. | : **ORAL ARGUMENT REQUESTED** : |
| GODIVA CHOCOLATIER, INC., | : : |
| *Defendant.* | : : : x |

# DEFENDANT GODIVA CHOCOLATIER, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS, TRANSFER, OR STAY

KASOWITZ BENSON TORRES LLP
Henry Brownstein (hbrownstein@kasowitz.com)
D.C. Bar No. 1026042
1399 New York Avenue, Suite 201
Washington, D.C. 20005
Tel.: (202) 760-3400

Seth A. Moskowitz (admitted *pro hac vice*)
Brian S. Choi (admitted *pro hac vice*)
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700

*Attorneys for Defendant Godiva Chocolatier, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 6

I.      Procedural History ................................................................................................... 6

        A.      Removal from the Superior Court of the District of Columbia ............................ 6

        B.      Putative Class Action in the Southern District of New York ................................ 6

II.     Godiva's History and Heritage ................................................................................. 7

III.    Allegations of the Amended Complaint .................................................................... 9

ARGUMENT ...................................................................................................................... 9

I.      Plaintiff's Non-Resident Status Forecloses His CPPA Claims ............................... 9

II.     Plaintiff Lacks Standing Under the CPPA Because Plaintiff Has Not Suffered an
        Injury ..................................................................................................................... 11

III.    Failure to State a Claim Under Rule 12(b)(6) ....................................................... 13

IV.     In the Alternative, This Case Should be Transferred to the Southern District of
        New York ............................................................................................................... 21

        A.      Venue is Proper in the Southern District of New York ....................................... 22

        B.      Discretionary, Case-Specific Factors Weigh Strongly in Favor of Transfer ....... 22

                1.      Private Factors ........................................................................................ 23

                2.      Public Factors ......................................................................................... 24

V.      In the Alternative, This Case Should be Stayed ..................................................... 26

CONCLUSION ................................................................................................................. 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alce v. Wise Foods, Inc.,
2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ........................................................................25

* Alicke v. MCI Comm'ns Corp.,
111 F.3d 909 (D.C. Cir. 1997) ...............................................................................................13

Ashcroft v. Iqbal,
556 U.S. 662 (2009)................................................................................................................13

Atl. Martine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas,
571 U.S. 49 (2013)..................................................................................................................25

* Barham v. UBS Fin. Servs.,
496 F. Supp. 2d 174 (D.D.C. 2007) .......................................................................................22

* Bartolucci v. 1-800 Contacts, Inc.,
245 F. Supp. 3d 38 (D.D.C. 2017).........................................................................................25

Beck v. Test Masters Educ. Servs. Inc.,
994 F. Supp. 2d 90 (D.D.C. 2013).........................................................................................10

Belize Soc. Dev. Ltd. v. Gov't of Belize,
668 F.3d 724 (D.C. Cir. 2012) ...............................................................................................27

* Bowring v. Sapporo U.S.A.,
234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..............................................................................17, 18

* Broomfield v. Craft Brew Alliance, Inc.,
2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ........................................................................19

Buxbaum v. Godiva Chocolatier, Inc.,
No. 19cv0558 (N.D. Cal.)..........................................................................................................7

Cooper v. Farmers New Century Ins. Co.,
593 F. Supp. 2d 14 (D.D.C. 2008) .........................................................................................11

* Dumas v. Diageo PLC,
2016 WL 1367511 (S.D. Cal. Apr. 6, 2016)...........................................................................17

* Ebner v. Fresh, Inc.,
838 F.3d 958 (9th Cir. 2016) ..................................................................................................21

Erie Ins. Exch. v. Ko,
    560 F. Supp. 2d 66 (D.D.C. 2008) ............................................................22

* Fahey v. Deoleo USA, Inc.,
    2018 WL 5840664 (D.D.C. Nov. 8, 2018) ...............................................13

* Federal Housing Fin. Agency v. First Tenn. Bank Nat'l Ass'n,
    856 F. Supp. 2d 186 (D.D.C. 2012) ...............................................23, 24, 25

* Forschner Grp., Inc. v. Arrow Trading Co. Inc.,
    30 F.3d 348 (2d Cir. 1994)........................................................................16

* Grayson v. AT&T Corp.
    15 A.3d 219 (D.C. 2011) ..........................................................................11

Hakki v. Zima Co.,
    2006 WL 852126 (D.C. Super. Ct. Mar. 28, 2006) ..................................13

* Hancock v. Urban Outfitters, Inc.,
    830 F.3d 511 (D.C. Cir. 2016) ..................................................................12

Hesse v. Godiva Chocolatier, Inc.,
    No. 19cv0972 (S.D.N.Y.) ...........................................................................6

Hisler v. Gallaudet Univ.,
    344 F. Supp. 2d 29 (D.D.C. 2004) ............................................................26

Holland v. A.T. Massey Coal,
    360 F. Supp. 2d 72 (D.D.C. 2004) ............................................................21

Hoyte v. Yum! Brands, Inc.,
    489 F. Supp. 2d 24 (D.D.C. 2007) ............................................................13

* Hulley Enters. Ltd. v. Russian Fed'n,
    211 F. Supp. 3d 269 (D.D.C. 2016) ...................................................27, 28

Islamic Rep. of Iran v. Boeing Co.,
    477 F. Supp. 142 (D.D.C. 1979) ...............................................................23

Landis v. N. Am. Co.,
    299 U.S. 248 (1936)...................................................................................27

* Lentz v. Eli Lilly & Co.,
    464 F. Supp. 2d 35 (D.D.C. 2006) ............................................................24

Levine v. Reader's Digest Assoc., Inc.,
    2005 WL 8167148 (D.D.C. 2005) .............................................................26

Mann v. Bahi,
    251 F. Supp. 3d 112 (D.D.C. 2017) ................................................................11, 13

* Martin v. Coca-Cola Co.,
    785 F. Supp. 3 (D.D.C. 1992) ...........................................................................14

* Marty v. Anheuser-Busch Cos., LLC,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ..............................................................20

* Nelson v. MillerCoors, LLC,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) .........................................................17, 19

Nichols v. U.S. Bureau of Prisons,
    895 F. Supp. 6 (D.D.C. 1995) ...........................................................................23

* Parent v. Millercoors LLC,
    2016 WL 3348818 (S.D. Cal. June 16, 2016) ...................................................16

* Peacock v. 21st Amendment Brewery Cafe,
    2018 WL 452153 (N.D. Cal. Jan. 17, 2018) .....................................................19

* Pernod Ricard USA LLC v. Bacardi USA,
    702 F. Supp. 2d 238 (D. Del. 2010) .................................................................15

* Piazza's Seafood World, LLC v. Odom,
    448 F.3d 744 (5th Cir. 2006) .............................................................................16

Ratley v. U.S. Postal Serv.,
    953 F. Supp. 2d 270 (D.D.C. 2013) ...................................................................6

* Reiffin v. Microsoft Corp.,
    104 F. Supp. 2d 48 (D.D.C. 2000) .........................................................23, 24, 25

* Rotunda v. Marriott Int'l, Inc.,
    2013 WL 11015730 (D.C. Super. Ct. 2013) .....................................................10

Saucier v. Countrywide Home Loans,
    64 A.3d 428 (D.C. 2013) ..................................................................................13

* Shalikar v. Asahi Beer U.S.A., Inc.,
    2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) ...................................................18

* Shaw v. Marriott Int'l, Inc.,
    605 F.3d 1039 (D.C. Cir. 2010) ......................................................................9, 10

Tefera v. OneWest Bank, FSB,
    19 F. Supp. 3d 215 (D.D.C. 2014) .....................................................................7

Wada v. U.S. Secret Serv.,
    525 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................24

* Wasser v. All Market, Inc.,
    No. 16-cv-21238, slip op. (S.D. Fla. Nov. 13, 2017) ..........................................20

Weiner v. Novartis Pharm. Corp.,
    991 F. Supp. 2d 217 (D.D.C. 2013) ....................................................................26

* Whiting v. AARP,
    701 F. Supp. 2d 21 (D.D.C. 2010) ................................................................14, 21

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................1, 21

D.C. Code § 28–3901 et seq. ................................................................................ passim

**Other Authorities**

Fed. R. Civ. P. 12(b) ...................................................................................................1

Fed. R. Civ. P. 81(c) ...................................................................................................6

U.S. Const. Art. III ...............................................................................................11, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................13

Defendant Godiva Chocolatier, Inc. ("Godiva" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss, with prejudice, Plaintiff A. Kevin Fahey's Amended Complaint (the "Complaint" or "Compl.") under Federal Rule of Civil Procedure 12(b); in the alternative, its motion to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a); and in the alternative, its motion to stay this action pursuant to this Court's inherent authority.

## PRELIMINARY STATEMENT

This case piggybacks off of a putative class action commenced months ago in the Southern District of New York (the "New York Action"). Both actions, in nearly identical fashion, attack Godiva's use of the phrase, "Godiva, Belgium 1926," (the "Heritage Representation") claiming that it somehow misled consumers into purchasing chocolates they believed were made in Belgium. But the Heritage Representation is an entirely accurate statement of the place and year in which Godiva was founded. Given the meritless nature of New York Action, Godiva filed a motion to dismiss that case on grounds which are equally applicable here. Indeed, the Complaint in this case is nothing more than a copy-paste job, with a substantial portion of its allegations cribbed directly from the March 2019 class action complaint filed in the New York Action. The only substantive difference between this lawsuit and the New York Action is that Plaintiff here only seeks relief pursuant to a District of Columbia consumer protection statute (as opposed to the laundry list of claims alleged in the New York Action).

Ironically, however, Plaintiff is not even a resident of the District of Columbia. Instead, the Complaint expressly avows that Plaintiff resides in Virginia and placed an online order of Godiva chocolates which was processed and shipped from a Virginia store. While Plaintiff purports to bring the underlying action on behalf of an unnamed, unquantified group of District of Columbia citizens, the incontrovertible facts of the Complaint bely any basis for Plaintiff to

sue under, much less benefit from, a statute designed to protect solely District of Columbia residents. The relevant cases cited herein clearly recognize that when a non-resident consumer conducts business with an out-of-state merchant like Godiva, the District of Columbia has no interest in the application of its laws to that transaction. For this reason alone, Plaintiff's Complaint should be dismissed.

Plaintiff's claims also must be dismissed because he fails to allege that he suffered any injuries as a result of Godiva's conduct. The threadbare Complaint insists that a purchase of Godiva's chocolate, alone, is sufficient to confer standing. To support that assertion, Plaintiff cites a District of Columbia decision that purportedly relaxed the standing requirements for claims associated with the consumer statute at issue here. But that decision did not abrogate, in any way, the obligation to satisfy a minimal constitutional requirement – adopted in the District of Columbia – that Plaintiff suffered a concrete harm bearing a causal nexus to Godiva's actions. Plaintiff's failure to connect his purchase of Godiva chocolate (made a day after Godiva was served and, accordingly, with knowledge that it was not from Belgium) to any harm attributable to Godiva's conduct forecloses him from any relief.

Turning to the merits, the Heritage Representation makes no claim, insinuation, or any other statement about where Godiva's chocolates are made. Rather, the phrase speaks solely to Godiva's corporate identity as a company that traces its roots almost a hundred years ago to a storefront in the Grand Place of Brussels. Of course, much has transpired since the Company's inception, and as Godiva began its rapid expansion in the global market, its ownership changed hands not once, but twice, through two major conglomerates. In spite of that growth, Godiva never lost sight of its Belgian roots, and particularly, the exceptionally high standards under which all of its chocolates are made, irrespective of where they are made.

Critically, Plaintiff does not take issue with the accuracy or truth of the Heritage Representation.  That is not surprising.  The phrase, "Godiva, Belgium 1926," taken by itself or in context, reasonably informs the consumer about the place and year in which Godiva was founded.  The Heritage Representation uses the Company's name on all of its labels, validating the notion that it was designed to describe the Company, not its products.  In other words, "Belgium 1926" modifies "Godiva," not the non-existent word "chocolates."

But Plaintiff ignores all of these salient features, and instead inexplicably reinterprets the phrase to manufacture a wholly specious claim that Godiva somehow deceived its consumers into believing its chocolates were only made in Belgium.  That disingenuous interpretation overlooks a critical and inseparable part of the Heritage Representation – "1926" – and disregards the fact that a reasonable consumer would read and consider the phrase in its entirety.  Indeed, Plaintiff's self-serving reading of the Heritage Representation would invite others to make an equally bizarre and implausible claim – i.e., that the Godiva chocolates he purchased were made nearly a hundred years ago in 1926.

Consequently, the Complaint must be dismissed as a matter of law.  The Heritage Representation, as an homage to the Company's heritage and history, is no different from the geographic references commonly associated with other products or companies – e.g., "Havana Club" rum (made in Puerto Rico) or "Swiss Army" knife (made in China) – that courts have unilaterally held are not misleading as a matter of law.  That proposition applies with equal force in today's global economy, where many multinational companies like Godiva operate all over the world and reference the place in which they were originally founded.  Mere references to such locations, without more, does not and cannot give rise to an actionable statement about where such companies' products were manufactured.  Reasonable consumers, using their

common sense and judgment, have the ability to readily distinguish between geographic references with respect to a company as opposed to its products.

Importantly, Plaintiff's claims are exclusively predicated on two general allegations that are inapposite to Godiva's particular conduct – the widely regarded quality of Belgian chocolates and a 1994 Washington Post article reporting on the varying taste profiles of American and Belgian-made chocolates.  Aside from the unlikely notion that a 25-year old article publicly reporting that "in Reading, Pa., you'll find chocolates being created in Godiva's U.S. plant"[1] could support the theory that Godiva misrepresented the source of its chocolates, these allegations fail to advance the specific claim that the Heritage Representation was purportedly designed to mislead consumers.  Irrespective of where Godiva makes its chocolates, it has always manufactured them in accordance with Belgian standards for high quality and service. Simply put, Godiva is not required by any law or regulation to certify that chocolates sold in the United States are made in Reading, Pennsylvania, particularly since the Heritage Statement, in its unvarnished form, does not create the perception that Godiva's products are made in any specific location, much less Belgium.

Given the absence of any evocative references, images, or turns of phrase stating, or even hinting, that Godiva's products are made in Belgium, this case is clearly distinguishable from a body of other cases involving place of origin claims where courts have faulted defendants for unlawfully cloaking their products with the imprimatur that they were made elsewhere.  Against the backdrop of those cases, there is nothing remotely deceptive about the Heritage

---

[1]      "Godiva: Better in Belgium?" THE WASHINGTON POST (Sept. 14, 1994), available at: https://www.washingtonpost.com/archive/lifestyle/food/1994/09/14/godiva-better-in-belgium/7e011581-5fbb-43bf-bc7e-6db959bf5178/?utm_term=.4bd2a54537f1, last accessed July 24, 2019.

Representation that could lead a reasonable consumer to conclude that Godiva's chocolates were manufactured in Belgium.

Finally, in the event this Court declines to dismiss the Complaint, it should transfer this action to the Southern District of New York (the "New York Court") where a putative class action is currently pending.  The New York Action consolidated two separate lawsuits – one filed in California and the other in New York – and involves the same set of allegations relevant here.  Godiva's motion to dismiss, completely briefed since June 2019, raises the same questions of law that this Court must confront – questions that could be obviated by transfer, joining all issues for the New York Court's consideration and avoiding the risk of inconsistent rulings between two forums.  While the discretionary factors underlying the analysis all militate in favor of a transfer, grounds for such transfer are even more compelling in view of the fact that this Plaintiff and the issues in this case lack any ties to the District of Columbia.  And, should the Court decline transfer, Godiva submits that a stay of this action – at least until the New York Court has resolved Godiva's pending motion to dismiss – is well within the Court's inherent authority to manage its docket and avoid the risk of inconsistent rulings from two different courts on the same threshold questions.

For these reasons, and those described more fully below, Godiva respectfully submits that dismissal of all claims – with prejudice – is warranted as a matter of law.  In the alternative, Godiva respectfully asks this Court to transfer this action, in the interests of justice, to the Southern District of New York, or to stay this action pending the New York Court's decision on Godiva's motion to dismiss.

## BACKGROUND

I.    **Procedural History**

A.    **Removal from the Superior Court of the District of Columbia**

On May 25, 2019, Plaintiff filed his original complaint in the Superior Court of the

District of Columbia ("D.C. Superior Court").  (See ECF No. 1, Ex. A.)  On June 18, 2019,

Godiva's registered agent was formally served with a copy of the summons and Original

Complaint.  (ECF No. 1, Ex. B.)  Before Godiva could respond to that complaint, on July 8,

2019, Plaintiff filed an Amended Complaint.  (See ECF No. 1, Ex. A.)

On July 17, 2019 – 29 days after Plaintiff had formally served process – Godiva removed

the action to the United States District Court for the District of Columbia and properly notified

the D.C. Superior Court of the removal, thereby divesting it of any jurisdiction over the case.

(ECF No. 1.)  Although counsel for Plaintiff has not yet entered his appearance in this Court,

Godiva served him with its removal papers by e-mail and certified mail.  Godiva now brings this

motion within seven days after filing its notice of removal.  Fed. R. Civ. P. 81(c); Ratley v. U.S.

Postal Serv., 953 F. Supp. 2d 270, 273 (D.D.C. 2013) ("a defendant ordinarily must" respond to

complaint "within 21 days of receipt of the complaint – through service or otherwise – or within

7 days after filing the notice of removal, whichever is longer").

B.    **Putative Class Action in the Southern District of New York**

This case is virtually identical to a putative class action commenced in the Southern

District of New York.[2]  Originally filed in January 2019, the New York Action merged two

---

[2]        The action is captioned, Hesse v. Godiva Chocolatier, Inc., No. 19cv0972 (S.D.N.Y.), and is pending
before the Honorable Alison J. Nathan of the Southern District of New York.

separate lawsuits – one from the Northern District of California[3] and another from the Southern District of New York – into a single consolidated putative class action seeking relief under New York and California's consumer protection statutes on behalf of a nationwide class (which would cover District of Columbia consumers), a New York subclass, and two California subclasses.

The operative complaint in the New York Action[4] appears to have served as a roadmap for Plaintiff's Complaint here – the two pleadings both reference Belgium's well-established reputation as a producer of high-quality chocolates, an obscure Belgian Chocolate Code promulgated by a voluntary trade association in Belgium, and a 1994 Washington Post article reporting on differences between Godiva's chocolates in Belgium and America.  The thrust of both actions is that Godiva's use of its trademarked logo, "Godiva, Belgium 1926," supposedly created the misleading impression that its chocolates were made in Belgium when, in fact, they were made at its facility in Reading, Pennsylvania.

In April 2019, Godiva moved to dismiss the New York Action.  (New York Action, No. 19cv0972, ECF No. 22.)  In May 2019, the plaintiffs filed their opposition.  (Id. at ECF No. 32.) And, in June 2019, Godiva filed its reply.  (Id. at ECF No. 34.)  With the motion fully briefed, the parties await the New York Court's decision.  All discovery in the New York Action has been stayed pending the resolution of the motion to dismiss.  (Id. at ECF No. 33.)

## II.    Godiva's Heritage and History

Godiva is a manufacturer of premium quality chocolates, with roots that can be traced back nearly a century to a small praline-making storefront located in the Grand Place of Brussels,

---

[3]       That action was styled, Buxbaum v. Godiva Chocolatier, Inc., No. 19cv0558 (N.D. Cal.), and was voluntarily dismissed by the plaintiff following the parties' agreement to consolidate the case in the Southern District of New York.

[4]       In evaluating a motion to dismiss, this Court may "consider documents in the public record of which the court may take judicial notice, as well as the existence of other litigation," including publicly filed pleadings in related actions.  Tefera v. OneWest Bank, FSB, 19 F. Supp. 3d 215, 220 (D.D.C. 2014).

Belgium.  It is there that in 1926, Pierre Draps, Sr. made pralines from his eponymous confectionary workshop alongside his sons, Joseph, Francois, and Pierre, Jr.  Over time, the Draps renamed their family business as Godiva and built it into a renowned purveyor of premium chocolate.  In 1966, after forging a relationship with the Campbell Soup Company, Godiva entered the United States for the first time.

By 1968, Godiva began producing its chocolates in the United States.  As Godiva's reputation reached new heights, its storefronts began dotting the globe in major cities like New York, Paris, and Tokyo.  In 2008, Godiva was acquired by Turkish consumer goods manufacturer Yildiz Holding, capping its ascent from a family business originally owned and operated in Brussels to an international brand with more than 270 retail locations and 2,000 wholesale hubs worldwide.

As its website makes clear,[5] Godiva established a manufacturing plant in Reading, Pennsylvania as part of its expansion into the U.S. market.  The Reading plant produces approximately the same amount of chocolate for the U.S. and Canadian markets as the Belgian plant produces for other parts of the world.  (Brownstein Decl. Ex. B.)  Godiva's world headquarters are now based in Manhattan.  Despite its global footprint, Godiva never lost sight of its Belgian heritage, which continues to inspire its products today.  Its website devotes a page highlighting the company's "Unparalleled Belgium Heritage Since 1926," and explains that the "Belgium 1926 logo" embodies "this spirit, paying homage to the time and place where our story first began."  (Brownstein Decl. Ex. A.)

---

[5] "History of Godiva," available at:
https://www.godiva.com/careersgodivahistory/careersGodivaHistory.html, last visited July 24, 2019.

III.    **Allegations of the Amended Complaint**

Plaintiff is a resident of Fairfax County, Virginia who allegedly purchased "a package of Godiva chocolate through Godiva's website" on June 19, 2019 – a day after Godiva was formally served with his Original Complaint.  (Compl. ¶ 18.)  Low resolution photographs of the receipt and packaging occupy nearly six pages of the Amended Complaint as proof of Plaintiff's purchase.  (Id. at 5-10 (designated as Figures 1–10).)  While difficult to discern, copies of the shipping receipts indicate that Plaintiff purchased his chocolate from a Godiva store located in Martinsville, Virginia and directed shipment to an address in Washington, D.C.  (Id. at Figures 1 and 2.)

The gravamen of the Amended Complaint is that Godiva's use of the "Godiva, Belgium 1926" logo allegedly "convey[s] the impression [that] Godiva's products are made in Belgium and have the qualities of confections so produced" even though they were actually produced at Godiva's "plant in Reading, Pennsylvania."  (Id. at ¶¶ 32–33.)  Based on the allegedly misleading nature of the Heritage Representation, Plaintiff asserts two causes of action under the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28–3901, et seq., on behalf of himself and the general public of the District Columbia.  (Id. at ¶¶ 42–72.)  For relief, Plaintiff seeks monetary damages for himself (but not the general public) and an injunction.  (Id. at 25 ("Prayer for Relief").)

## ARGUMENT

I.    **Plaintiff's Non-Resident Status Forecloses His CPPA Claims**

This case should be dismissed even before this Court entertains the merits of the underlying claims because Plaintiff – as a non-resident of the District of Columbia – cannot bring, either in an individual or representative capacity, an action predicated on a statute expressly designed to serve only District of Columbia residents.  Shaw v. Marriott Int'l, Inc., 605

F.3d 1039, 1045 (D.C. Cir. 2010); <u>Rotunda v. Marriott Int'l, Inc.</u>, 2013 WL 11015730, at *4

(D.C. Super. Ct. 2013).  "The CPPA was enacted to protect District of Columbia consumers from

unscrupulous merchants transacting business with them and to regulate District of Columbia

merchants transacting business with consumers everywhere.  <u>When a nonresident consumer does</u>

<u>business with an out of state merchant, the District of Columbia has no interest in the application</u>

<u>of its laws to that transaction</u>, whether or not the merchant likes to pretend, for other purposes,

that its business is located in the nation's capital."  <u>Rotunda</u>, 2013 WL 11015730 at *5 (emphasis

added).

Here, Plaintiff is a Virginia resident whose only connection to the District of Columbia is

that he placed an online order for Godiva's chocolates that were ultimately shipped to an address

there.  Aside from that single shipment, nothing else in the Complaint bears any relationship to

the District of Columbia – "[n]either [Plaintiff's] injury nor [Godiva's] conduct occurred in the

District of Columbia.  Neither party has a domicile, residence, place of incorporation, or

principal place of business in Washington, and it is clear that the relationship between them is

not centered in the District."[6]  <u>Shaw</u>, 605 F.3d at 1045.  Moreover, the chocolates at issue here

were purchased from a Godiva store in <u>Martinsville, Virginia</u>, further underscoring the

attenuated relationship between this case and this district.  (Compl. at 5 (Figure 2).)  In fact, it

suggests that Plaintiff deliberately sought to manufacture a basis to assert – and benefit from –

what is reportedly "one of the nation's most consumer friendly" laws.[7]  Simply put, Plaintiff is

---

[6]     While courts in other cases have permitted non-resident plaintiffs to bring CPPA claims, "[h]aving one
party who is a D.C. resident was a key" and distinguishing factor in the underlying analysis.  <u>Beck v. Test Masters
Educ. Servs. Inc.</u>, 994 F. Supp. 2d 90, 95 n.1 (D.D.C. 2013) (citations omitted).

[7]     "In the Case of Missing Trousers, Aggrieved Party Loses Again," N.Y. TIMES (Jun. 26, 2007), available at:
https://www.nytimes.com/2007/06/26/us/26trousers.html, last visited July 24, 2019.

not "among the consumers that [the] CPPA is intended to protect." Cooper v. Farmers New Century Ins. Co., 593 F. Supp. 2d 14, 23 (D.D.C. 2008).

## II.     Plaintiff Lacks Standing Under the CPPA Because Plaintiff Has Not Suffered an Injury

Dismissal of this action is also warranted because Plaintiff did not suffer an actual injury – a threshold standing requirement under the CPPA.  Plaintiff's own allegations make clear that Plaintiff neither relied on, nor was deceived by, the Heritage Representation when purchasing Godiva's chocolates.  In the absence of such allegations, Plaintiff's June 19 purchase – made a day after Godiva was formally served – vitiates any claim that he was misled by the Heritage Representation (i.e., he purchased the chocolate with knowledge that it was not made in Belgium).

Plaintiff contends that "[u]nder the CPPA, [ ] a purchase is all that is necessary to give [him] standing to be the Representative of the DC General Public in this action" in his capacity as a private attorney general.  (Compl. ¶¶ 19–21.)  In doing so, he intimates that a seminal District of Columbia case – Grayson v. AT&T Corp. – confers standing on CPPA plaintiffs in the absence of any harm, alleging that it "upheld the standing of a purchaser" even though that person "knew when he purchased the product that it had the defects at issue."  (Id. ¶ 21 (citing 15 A.3d 219, 249–52 (D.C. 2011).)

"While Congress, or in this case the District of Columbia, may define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before, a plaintiff must still suffer a concrete and particularized injury to satisfy the requirements of Article III."[8] Mann v. Bahi, 251 F. Supp. 3d 112, 119 (D.D.C. 2017).  Even Grayson – the

---

[8]      The Court of Appeals of the District of Columbia has adopted Article III's "case or controversy" standing requirement generally, and under the CCPA, specifically.  See Grayson, 15 A.3d at 233–34 ("Even though we are an Article I court, we have followed Supreme Court developments in constitutional standing jurisprudence with respect

case on which Plaintiff principally relies – made clear that the District of Columbia's legislature, in its 2000 amendments to the CPPA, "expressed no intent to override or disturb this court's constitutional standing requirement." Grayson, 15 A.3d at 243.  The court there specifically recognized the dangers and risks – manifested here – of eliminating the standing requirement, holding that doing so would "produce the unintended result of overturning our long-enduring legal principles governing constitutional standing; it also would open our courts to any person from anywhere who decides to lodge a complaint labeled as a 'representative action' under the CPPA, even though that person has suffered no injury-in-fact related to a District of Columbia merchant's unlawful trade practice." Id. (emphasis added).

Here, Plaintiff has simply failed to satisfy the "irreducible constitutional minimum of standing," which requires an injury that is "concrete and particularized," "actual or imminent, not conjectural or hypothetical," and bears a "causal connection" to the alleged misconduct. Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 513 (D.C. Cir. 2016).  Despite Grayson's purported relaxation of the standing requirement, "an asserted injury to even a statutorily conferred right must actually exist, and must have affected the plaintiff in a personal and individual way." Id. at 514.  The allegation of "a bare procedural violation, divorced from any concrete harm" falls woefully short of satisfying the injury-in-fact requirement of Article III.  Id. Plaintiff blithely references a theoretical injury caused by Godiva's alleged deception, but that assertion is belied by the timing of Plaintiff's purchase – made a day after he had formally served the summons and original complaint on Godiva's registered agent.  The Complaint is bereft of any allegations that Plaintiff relied on the Heritage Representation (i.e., actually believed that the

---

to 'whether the plaintiff has made out a case or controversy between him[/her] and the defendant within the meaning of Article III[.]'") (quoting Consumer Fed'n of Am. v. Upjohn Co., 346 A.2d 725, 727 (D.C. 1975)).

products he purchased originated from Belgium), or that he suffered a concrete injury due to Godiva's alleged conduct.  Hoyte v. Yum! Brands, Inc., 489 F. Supp. 2d 24, 28–29 (D.D.C. 2007); Hakki v. Zima Co., 2006 WL 852126, at *2 (D.C. Super. Ct. Mar. 28, 2006) (plaintiff "does not have a private right of action [under the CPPA] unless he can plead an injury in fact to a legally protected interest that is particular to him").

### III.   Failure To State A Claim Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A court need not, however, accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor must a court accept a plaintiff's legal conclusions." Fahey v. Deoleo USA, Inc., 2018 WL 5840664, at *1 (D.D.C. Nov. 8, 2018).

Plaintiff broadly asserts two causes of action under the CPPA for breach of express and implied warranties and unfair and deceptive trade practices.  Both claims focus on whether a defendant deceptively represented that its "goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have" or are "of a particular standard, quality, grade, style or model, if in fact they are of another." Id. at *2 (citing CPPA § 28–3904 and D.C. Code § 28:1–101 et seq.)).

In assessing the sufficiency of the Complaint, this Court must "consider an alleged unfair trade practice in terms of how the practice would be viewed and understood by a reasonable consumer." Saucier v. Countrywide Home Loans, 64 A.3d 428, 442 (D.C. 2013).  While the "reasonable consumer" standard lends itself to a factual inquiry, "there are times when it is sufficiently clear to be determined as a matter of law." Mann, 251 F. Supp. 3d at 126; Alicke v. MCI Comm'ns Corp., 111 F.3d 909, 912 (D.C. Cir. 1997).  The context in which the Heritage Representation appears is critical when determining whether a reasonable consumer would have

13

been deceived.  Whiting v. AARP, 701 F. Supp. 2d 21, 29 (D.D.C. 2010) ("This language, especially when viewed in context, would not have misled a reasonable consumer.").

The thrust of Plaintiff's claims here is that the Heritage Representation somehow imparts a "place of origin" claim – i.e., that Godiva deceived consumers into believing that its chocolates were made in Belgium.  He attempts to burnish that claim through general allegations that Belgian chocolates are universally well-regarded for their quality, and a 25-year old news article reporting on the varying taste profiles of chocolates made in various locations.  (Compl. ¶¶ 24–28, 34–36.)

But Plaintiff's claims, at their core, rest on the theory that the word "Belgium" unconditionally sends the message that Godiva's chocolates are made in Belgium.  Crediting this tenuous theory would create the dangerous precedent that any geographic references on product labels are misleading.  It would not only restrain the legitimate, bona fide marketing practices of the myriad multinational companies conducting business in the United States, but would also jeopardize their ability to honor their heritage and history.  That risk is particularly acute where, as here, the label accurately states, and merely alludes to, Godiva's place and year of origin.

The Complaint here should be dismissed for what it disingenuously conceals – that the Heritage Representation is a completely accurate, unambiguous statement of historical fact designed to honor Godiva's place of origin and longstanding history, and not its products.  Whiting, 701 F. Supp. 2d at 29; Martin v. Coca-Cola Co., 785 F. Supp. 3, 3 (D.D.C. 1992) ("Defendants' advertisement was truthful, and plaintiff has failed to allege any injury he suffered as a result of their truthful statement.").  In fact, the Heritage Representation – on its face or in the context of the packaging – makes no claim that Godiva's chocolate is made in Belgium.

14

While Godiva recognizes that an accurate statement may nevertheless be misleading in nature, even that inquiry should be resolved in Godiva's favor after reviewing the disputed label in full context.  The Complaint focuses almost exclusively on the word "Belgium," but conveniently overlooks that it is flanked by the terms "Godiva" and "1926" – the year in which Godiva was founded.  Construing the phrase as a whole, "Godiva, Belgium 1926" unequivocally pertains to the corporate identity and history of Godiva, the company – rather than, as Plaintiff claims, chocolates – a word that appears nowhere in the Heritage Representation.

Plaintiff literally rewrites the Heritage Representation to support his claim.  Plaintiff pretends the Heritage Representation uses the adjective "Belgian" (and associates it with chocolate, *see infra*) as opposed to "Belgium," the location where Godiva was founded in 1926. (Compl. ¶¶ 2, 31–32.)  Moreover, adopting Plaintiff's self-serving rewrite of the phrase would completely deprive the term "1926" of any meaning or context.  Even worse, Plaintiff's piecemeal reading of the Heritage Representation would give rise to a highly implausible claim – that consumers could be deceived into believing that Godiva's chocolates were made nearly a hundred years ago in 1926.

The mere allegation that Belgian chocolates are widely regarded for their quality does nothing to bolster Plaintiff's claims.  Godiva, like many companies historically associated with their place of origin, may properly appeal to its heritage – here, its Belgian origins – when marketing its products.  In fact, courts have routinely held that mere reference to a geographic location that consumers commonly associate with a product is not misleading.  See Pernod Ricard USA LLC v. Bacardi USA, 702 F. Supp. 2d 238, 244 (D. Del. 2010) (designation "Havana Club" and bottle design referencing a "family recipe . . . [d]eveloped in Cuba circa 1930" for rum made in Puerto Rico are not actionable statements of geographic origin because

they appeal to the "[i]magery of circa 1950s Cuban nightlife" and "Cuban heritage"); <u>Forschner Grp., Inc. v. Arrow Trading Co. Inc.</u>, 30 F.3d 348, 355 (2d Cir. 1994) (use of term "Swiss Army Knife" to describe a multifunction pocket knife made in China is not false and misleading because "[t]he fact that a composite phrase contains a geographic term does not necessarily mean that the phrase, viewed as a whole, is a geographic designation"); <u>Piazza's Seafood World, LLC v. Odom</u>, 448 F.3d 744, 753 (5th Cir. 2006) ("Cajun Boy" and "Cajun Delight" catfish product imported from China not confusing or misleading as to geographic origin).  The more appropriate "question is whether <u>the phrase</u> can be construed to mean that the product is made in a certain locale."  <u>Forschner</u>, 30 F.3d at 355 (emphasis in original).  Here, no reasonable consumer could construe the Heritage Representation to mean that Godiva's chocolates must have indubitably been made in Belgium.

Use of geographic references are replete in product marketing today – Greek yogurt, Swiss Miss hot chocolate, English muffins, or German engineering, to name just a few – and represent no more than a testament to the places where each of those products were made famous.  A reasonable consumer understands and appreciates that those products may not actually be manufactured there today.  While the Heritage Representation explicitly references "Belgium," nowhere on the label "is it stated that [Belgium] . . . is the only place in which [Godiva chocolate] is produced."  <u>Parent v. Millercoors LLC</u>, 2016 WL 3348818, at *6 (S.D. Cal. June 16, 2016) (representations about Blue Moon beer's original production from the "Sandlot" brewery does not mean Blue Moon "is currently produced only out of the SandLot brewery").

The unfounded allegations in this case stand in stark contrast to the line of cases involving deceptive geographic origin claims.  Nothing about Godiva's label evokes a sense that

its chocolates were made in Belgium.  The label is devoid of any of the marketing features that other companies have questionably used to elicit place of origin sentiment.  By marked contrast, the disposition of each of the other place of origin cases described below have been predicated on a series of evocative images, fonts, or phrases closely associated with certain geographic location.  Many of these cases involved location-specific features so pervasively emblazoned across the disputed labels that they were intended to elicit, in a reasonable consumer's mind, an inescapable belief that the products at issue originated from certain locations.  For example:[9]

- ***Red Stripe Jamaican Beer.***  A "Jamaican Style Lager" described as "The Taste of Jamaica," with a label touting that "[f]or over 80 years, Red Stripe has embodied the spirit, rhythm and pulse of Jamaica and its people."  The beer was not made in Jamaica, and on the contrary, was actually produced in Latrobe, Pennsylvania.  Dumas v. Diageo PLC, 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016) (dismissing claims entirely).

- ***Sapporo Japanese Beer.***  The "original Japanese beer" embossed with "imagery of a Japanese landscape being traveled into American landscape, ending with the slogan 'The Original Japanese Beer,'" bearing the slogans "Sapporo – the Original Japanese Beer" and "Japan's Oldest Brand," and displaying an image of the "North Star, a symbol of pioneers in the area of Sapporo."  The beer was not made in Japan, and on

---

[9]     Many of the cases were dismissed in their entirety – like Dumas, Bowring, and Nelson – principally on grounds that an express disclaimer had sufficiently cured the labels of their misleading features.  But unlike those cases, Godiva need not rely on the existence of clarifying language – nor is it required to place such language on its labels – because the Heritage Representation is neither misleading on its face nor in the context of the products' packaging.  In any event, Dumas expressly acknowledged that "the language on the bottle labels would not lead a reasonable consumer to believe that Red Stripe is made in Jamaica with Jamaican ingredients . . . The [disputed] language is a vague, colorful expression of Red Stripe's association with Jamaica and cannot reasonably be construed as a designation of origin."  Dumas v. Diageo PLC, 2016 WL 1367511, at *5 (S.D. Cal. Apr. 6, 2016) (emphasis added).

the contrary, was actually produced in Ontario, Canada and La Cross, Wisconsin. Bowring v. Sapporo U.S.A., 234 F. Supp. 3d 386, 388 (E.D.N.Y. 2017) (dismissing claims entirely).

- *Asahi Japanese Beer.* Japanese beer labeled with the "'Asahi' name, which means 'morning sun' in Japanese," the "Japanese Katakana script which means 'Asahi beer,'" and "Super Dry," and the "Japanese Kanji characters which mean 'Karakuchi'," or "dry taste." The beer was not made in Japan, and on the contrary, was actually produced in Toronto, Canada. Shalikar v. Asahi Beer U.S.A., Inc., 2017 WL 9362139, at *3, *8 (C.D. Cal. Oct. 16, 2017) (denying motion to dismiss because the "words, pictures, [and] diagrams adorning the packaging could give rise to a reasonable inference or belief that the Product was produced in Japan" and because the complaint alleged "survey evidence" indicating that the majority of respondents believed that the product was produced in Japan).

- *Fosters Australian Beer.* Australian beer marketed with the "brand slogan 'Foster's Australian for Beer'" and "How to Speak Australian," with advertisements "depicting Foster's as being a product from Australia by using Australian accents and scenery," a website representing that the beer's hops "are only grown in three locations in Australia," an "outline of the country of Australia, references to [the beer's] roots and history of Australia, and use of Australian symbols and phrases," and "an image of a Red Kangaroo, the national symbol of Australia, and the Southern Cross constellation, which is a main component of the Australian national flag." The beer was not made in Australia, and on the contrary, was actually produced in Fort Worth,

Texas.  Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 670–71 (E.D.N.Y. 2017)

(dismissing claims entirely).

- **Bay Area Beer.**  San Francisco-area beer brand, 21st Amendment, labeled with a

   "map of the Bay Area with an X designating where the brewery is located," an

   "origin statement describing the brewery's beginning in San Francisco," and

   explicitly stating that it is "Brewed & Canned by 21st Amendment Brewery, San

   Leandro, CA."  The beer was not made in San Francisco or the Bay Area, and on the

   contrary, was actually produced in Minnesota.  Peacock v. 21st Amendment Brewery

   Cafe, 2018 WL 452153, at *1–2, *6 (N.D. Cal. Jan. 17, 2018) (denying motion to

   dismiss, in part, based on geographic symbols and references giving rise to actionable

   statements).

- **Kona Hawaiian Beer.**  Kona brand beer labeled with an "image of a map of Hawaii

   which marks the location of the Kona Brewing Co. Brewery on the Big Island," and

   the phrase "Liquid Aloha" with "an image of the Hawaiian island chain," invited

   purchasers to "visit our brewery and pubs whenever you are in Hawaii," touted

   "Hawaiian-related images, including orchid flowers, volcanoes, palm trees, surfers,

   canoes, waterfalls, and hula dancers," displayed phrases like "Thirst's Up," "Catch a

   Wave!," "Crack Open Aloha!," and listed only a Hawaii-specific address.  The beer

   was not made in Hawaii, and on the contrary, was actually produced in the

   continental United States.  Broomfield v. Craft Brew Alliance, Inc., 2017 WL

   3838453, at *1–2 (N.D. Cal. Sept. 1, 2017) (denying motion to dismiss, in part,

   holding that "Hawaiian address, the map of Hawaii identifying defendant's brewery

   on the Big Island, and a statement inviting purchasers to visit the brewery when in

Hawaii" were "specific and measurable representations of fact that could deceive a
reasonable consumer into believing that . . . Kona beer w[as] brewed in Hawaii").

- ***Beck German Beer.***  Beck's beer brand marketed as having "Originated in Germany"
  with "German Quality" and "Brewed Under the German Purity Law of 1516."  The
  beer was not made in Germany, and on the contrary, was actually produced in St.
  Louis, Missouri.  <u>Marty v. Anheuser-Busch Cos., LLC</u>, 43 F. Supp. 3d 1333, 1340–42
  (S.D. Fla. 2014) (denying motion to dismiss because "reasonable consumer may not
  know what compliance with the German Purity Law means" and that multiple
  specific references to Germany in connection with describing quality of beer could be
  deceiving and warranted fact-specific inquiry not suitable on motion to dismiss).

- ***Brazilian Coconut Water.***  Vita Coco brand labeled with the phrase "Born in Brazil"
  capitalizing on the "agua de coco" popularized in Brazil.  The coconut water was not
  made in Brazil, and on the contrary, was actually produced in multiple locations
  outside of Brazil.  <u>Wasser v. All Market, Inc.</u>, No. 16-cv-21238, slip op. at 6–7 (S.D.
  Fla. Nov. 13, 2017) (denying motion to dismiss on grounds that packaging obscured
  express disclaimers of production location).

Against this backdrop, the Complaint's allegations concerning the supposedly misleading
nature of the Heritage Representation fall woefully short of the level of plausibility required to
survive a motion to dismiss.  The products here contain a single reference to Belgium in an
inseparable, three-word phrase – Godiva, Belgium 1926 – which was designed solely to honor
Godiva's nearly century-old existence and its place of origin.  Any reference or association to
Belgium ends there.

Neither the Heritage Representation nor the product packaging perpetuate the consumer perception from which Plaintiff's specious claims arise – no photos of the Grand Place in Brussels or any other prominent sites in Belgium, no other references or allusions to Belgium, no manipulative typography or gimmicky slogans associated with Belgium, or any other features evoking a sense of Belgium on the label.  "[T]here is no deceptive act to be dispelled . . . [a]part from the accurate [historical statement], there are no words, pictures, [ ] diagrams" or any other references to Belgium "adorning the packaging . . . from which any inference could be drawn or on which any reasonable belief could be based about" the origin of the Products.  Ebner v. Fresh, Inc., 838 F.3d 958, 966 (9th Cir. 2016).  Accordingly, in the "absence of any statement or other depiction anywhere on the package about [geographic origin] . . . it is not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled into thinking" that the products were made in Belgium.  Id.; Whiting, 701 F. Supp. 2d at 29 (because disputed advertisement is "in fact either accurate [or] not misleading to a reasonable consumer . . . , [plaintiff] has failed to identify any conduct actionable under the CPPA").

## IV.    In the Alternative, This Case Should Be Transferred to the Southern District of New York

Absent dismissal of the Complaint, the "fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer" to the Southern District of New York.  Holland v. A.T. Massey Coal, 360 F. Supp. 2d 72, 77 (D.D.C. 2004).  Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought."  Godiva must show that Plaintiff "originally could have brought the action in the proposed transferee district," and "that considerations of convenience and the

21

interest of justice weigh in favor of transfer to that district."  <u>Barham v. UBS Fin. Servs.</u>, 496 F.

Supp. 2d 174, 177 (D.D.C. 2007).

###### A.      Venue is Proper in the Southern District of New York

As an initial matter, this action could have been brought in the Southern District of New

York.  Where "the Court's jurisdiction is based solely on diversity of citizenship, venue is proper

in (1) a judicial district where any defendant resides . . . [or] (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred."  <u>Erie Ins. Exch. v.</u>

<u>Ko</u>, 560 F. Supp. 2d 66, 67 (D.D.C. 2008).  Here, Godiva resides in the Southern District of New

York, where it is headquartered and purposely avails itself of conducting business.  The Southern

District is also the forum in which a substantial part of the events or omissions giving rise to

Plaintiff's purported claim arose – <u>i.e.</u>, the allegedly fraudulent mislabeling of Godiva's

products.

###### B.      Discretionary, Case-Specific Factors Weigh Strongly in Favor of Transfer

Once venue has properly been established in the transferee forum, courts must weigh a

series of case-specific private and public factors.  The "private-interest consideration[s] include:

(1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the

defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the

convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the

witnesses may actually be unavailable for trial in one of the [applicable forums here]; and (6) the

ease of access to sources of proof.  <u>Barham</u>, 496 F. Supp. 2d at 177.  The "public-interest

considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative

congestion of the calendars of the potential transferee and transferor courts; and (3) the local

interest in deciding local controversies."  <u>Id</u>.  "Another paramount consideration is the

compelling public interest in avoiding duplicative proceedings . . . and potentially inconsistent

judgments." <u>Federal Housing Fin. Agency v. First Tenn. Bank Nat'l Ass'n</u>, 856 F. Supp. 2d 186, 193 (D.D.C. 2012).

### 1.     Private Factors

While a plaintiff's choice of forum is generally an important factor, it is given "substantially less deference" if it is not his home forum.  <u>Reiffin v. Microsoft Corp.</u>, 104 F. Supp. 2d 48, 52 (D.D.C. 2000).  Plaintiff's choice matters even less in cases where "the activities forming the basis of the suit have little, if any, connection with the chosen forum."  <u>Nichols v. U.S. Bureau of Prisons</u>, 895 F. Supp. 6, 8 (D.D.C. 1995) (alterations omitted); <u>Islamic Rep. of Iran v. Boeing Co.</u>, 477 F. Supp. 142, 144 (D.D.C. 1979) ("In weighing claims of convenience, the Court recognizes diminished consideration accorded to plaintiff's choice of forum where . . . that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.").

Here, the District of Columbia has virtually no connection to the events giving rise to this action, save for a single order of Godiva chocolate shipped within its borders.  (Compl. at 5 (Figure 1).)  All of the other material, operative facts of this case lack any nexus to this forum. Plaintiff resides in Virginia.  Godiva resides in New Jersey, where it is incorporated, or New York, where it operates its main corporate office and conducts substantial business.  It has no presence in the District of Columbia.  The chocolates at issue here were ordered online and processed and shipped from a Martinsville, Virginia store.  The events or omissions underlying this action arose, in substantial part, in New York, where Godiva is headquartered.  Godiva's development, branding, and implementation of the phrase at issue here – the Heritage Representation – occurred, in large part, in New York.

The other private factors either militate in favor of transfer or have no effect on the analysis.  Godiva's preference to litigate this case in the Southern District of New York is

"certainly . . . more logical . . . in light of the ongoing [related litigation] in that district." Wada v. U.S. Secret Serv., 525 F. Supp. 2d 1, 14 (D.D.C. 2007). Commenced in January 2019, the New York Action involves the same allegations centered on the purportedly misleading nature of the Heritage Representation, and seeks substantially the same form of relief. Godiva has incurred the burden of briefing a thorough motion to dismiss and now awaits the New York Court's decision. As such, the "existence of these parallel proceedings provides support for [Godiva's] choice of the Southern District of New York as the forum for the litigation of this case." First Tenn. Bank, 856 F. Supp. 2d at 193.

Moreover, most of the parties, except for Plaintiff, are located in New York. Godiva maintains its headquarters in midtown Manhattan, and has no corporate presence or offices in the District of Columbia. Virtually all of the witnesses whose testimony would bear on the issues here – former or current Godiva employees – reside or work in or near New York. "The subpoena power of the [New York] court reaches all of those potential non-party witnesses, while this Court's does not." Lentz v. Eli Lilly & Co., 464 F. Supp. 2d 35, 37 (D.D.C. 2006). And while most of the relevant documents are likely to be in electronic form, access to them, if anything, tends to favor New York since virtually all of the documents subject to discovery in this action are located and will be produced in the New York Action. Reiffin, 104 F. Supp. 2d at 53 (sources of proof more readily accessible to transferee forum which has parties' submissions bearing on claims).

### 2.    Public Factors

"The most compelling public interest factor weighing in favor of transferring this action to the Southern District of New York is that the interests of justice would be served by avoiding duplicative proceedings . . . and potentially inconsistent judgments." First Tenn. Bank, 856 F. Supp. 2d at 194. Since January 2019, the New York Court has had the opportunity to familiarize

itself with the facts and issues of the dispute in the New York Action.  Currently pending before the New York Court is Godiva's motion to dismiss, which was completely briefed in early June 2019.  This Court's resolution of the same issue – whether the Heritage Representation is misleading as a matter of law (which it is not) – would "undoubtedly overlap, and possibly conflict, with" the New York Court's assessment.  Id. at 194–95.  Additionally, even if a transfer of this case does not ultimately result in the consolidation of this action with the New York Action, "at a minimum such a transfer could facilitate the coordination of pretrial discovery" given the substantial likelihood that documents and testimony bearing on the issues in each case will overlap.  Id. at 195 (citing Comptroller of Currency v. Calhoun First Nat'l Bank, 626 F. Supp. 137, 141 (D.D.C. 1985)).  Given the risks of keeping the case here – and the clear benefits of transfer – the "interests of justice are better served when a case is transferred to the district where related actions are pending."  Reiffin, 104 F. Supp. 2d at 56.

Another factor – the transferee court's familiarity with the governing law – supports transfer.  While Plaintiff's claim here is predicated on a District of Columbia statute, that fact is not dispositive of whether the Southern District of New York is familiar with the law governing this case.  "[F]ederal judges routinely apply the law of a State other than the State in which they sit."  Atl. Martine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 67 (2013); Bartolucci v. 1-800 Contacts, Inc., 245 F. Supp. 3d 38, 49 (D.D.C. 2017) (transferring case and observing "all federal courts are more than capable of adjudicating state law claims for a variety of jurisdictions").  The task of interpreting and applying the CPPA will not be a difficult one for the New York Court, given that it shares the same standard under which liability is assessed with the New York and California laws at issue in the New York Action.  See Alce v. Wise Foods,

Inc., 2018 WL 1737750, at *9 (S.D.N.Y. Mar. 27, 2018) (analyzing reasonable consumer standard under both New York and D.C. statutes).

The remaining two factors – relative congestion and local interest in deciding local controversies – also support transfer.  Both New York and the District Columbia boast active dockets involving high-stakes, complex litigation.  Congestion – which is measured by "comparing the districts' median times from filing to disposition or trial" – weighs against the District of Columbia.  Weiner v. Novartis Pharm. Corp., 991 F. Supp. 2d 217, 223–24 (D.D.C. 2013); Levine v. Reader's Digest Assoc., Inc., 2005 WL 8167148, at *3 (D.D.C. 2005).  While these statistics do not substantially differ between the two districts,[10] they nevertheless "weigh[] slightly in favor of transfer." Id. at 224.  Further, since Godiva has moved to "transfer relatively early in this litigation" any "delay attributable to transfer is likely to be minimal." Id.

Finally, while each state has an interest in addressing local controversies, this case has no connection to the District of Columbia.  Rather, it poses the unusual scenario in which Plaintiff seeks redress for purported harm on behalf of the general public of the District of Columbia even though he does not reside there.  Further, this Court's substantive review of the claims could result in an unnecessary expenditure of judicial resources since the New York Court is already considering the same threshold legal question posed here.

## V.    In the Alternative, This Case Should Be Stayed

This Court has "broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." Hisler v. Gallaudet Univ., 344 F. Supp. 2d

---

[10]    As of March 2019, the median time from filing to disposition and filing to trial, in the Southern District of New York, was 5.9 months and 35.1 months, respectively.  By contrast, the same metric in the District of Columbia was 5.8 months and 43.3 months, respectively.  (Federal Court Management Statistics, United States District Courts (March 2019), available at:
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf, last accessed July 24, 2019.)

29, 35 (D.D.C. 2004) (citing <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936)).  That discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  <u>Landis</u>, 299 U.S. at 254–55.  In considering a stay, courts must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties."  <u>Belize Soc. Dev. Ltd. v. Gov't of Belize</u>, 668 F.3d 724, 732–33 (D.C. Cir. 2012).

While Godiva respectfully submits that a dismissal of the Complaint or a discretionary transfer would be the most appropriate course of action, in the absence of such steps, a stay here – at least until the New York Court resolves Godiva's fully briefed motion to dismiss – would at least "avoid potentially fractured and disorderly and unnecessary litigation and best preserve judicial and parties' resources."  <u>Hulley Enters. Ltd. v. Russian Fed'n</u>, 211 F. Supp. 3d 269, 285 (D.D.C. 2016).  This action mirrors – in virtually identical form – the New York Action, and would unnecessarily require this Court to undertake the task of analyzing the same allegations and consumer protection standards that the New York Court has been considering.  A concurrent, dual-track review would amount to an unnecessary expenditure of judicial time and resources.

Even worse, it could result in fundamentally inconsistent dispositions, potentially leaving Godiva in a bind as to how it can adequately comply with potentially disparate orders rendered by this Court and the New York Court.  It is also "clear that the outcome of the judicial proceedings" in New York may "affect this Court's determinations."  <u>Id.</u> at 284.

Finally, because this Court's power to stay a case "does not require that the issues in [related] proceedings are necessarily controlling of the action before the court," it may, in its broad discretion, enter one for practical other reasons.  <u>Id.</u> at 276 (citing <u>Landis</u>, 299 U.S. at 254).  A stay would yield meaningful benefits, namely saving this Court from incurring the

burden and expense of resolving threshold, dispositive issues of law when the New York Court is

qualified to do so on behalf of both courts.  Indeed, "resolution of other litigation will likely

narrow the issues in the pending cases and assist in the determination of the questions of law

involved." Id. at 276.

## **CONCLUSION**

For the foregoing reasons, Godiva respectfully requests that this Court dismiss the

Complaint with prejudice for failure to state a claim and for lack of standing.  In the alternative,

Godiva respectfully requests that this Court transfer, in the interests of justice, this action to the

Southern District of New York, where an action arising from substantially the same nucleus of

operative facts and involving substantially identical issues of law is currently pending.  Should

the Court decline to dismiss or transfer this action, Godiva respectfully asks for a stay until the

Southern District of New York resolves Godiva's pending motion to dismiss.


Dated:  July 24, 2019
     Washington, D.C.

    KASOWITZ BENSON TORRES LLP

    By:   /s/ Henry Brownstein

    Henry Brownstein
    D.C. Bar No. 1026042
    1399 New York Avenue, Suite 201
    Washington, D.C. 20005
    Tel.: (202) 760-3400

    Seth A. Moskowitz (admitted *pro hac vice*)
    Brian S. Choi (admitted *pro hac vice*)
    1633 Broadway
    New York, New York 10019
    Tel.:  (212) 506-1700

    *Attorneys for Defendant Godiva Chocolatier, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2019, I electronically filed a true and correct copy of the

foregoing document with the Clerk of Court using the CM/ECF system.  I further certify that I

served true copies of the aforementioned document on the following individual via email and

certified mail:

> Thomas C. Willcox, Esq.
> 1701 16th Street, N.W.
> Suite 211
> Washington, D.C. 20009
> tcw19law@gmail.com
>
> *Attorney for Plaintiff*

_____/s/ Henry Brownstein_____
Henry Brownstein
