UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Kevin Fahey on behalf of himself and the
General Public of the District of Columbia,

v.

                                         Civil Action No 19-cv-2128 (JDB)

Godiva Chocolatier, Inc.            JURY TRIAL DEMANDED
Defendant

### REPLY TO DEFENDANT CHOCOLATIER'S INC'S OPPOSTION TO PLAINTIFF'S MOTION TO REMAND

**I.     PRELIMINARY STATEMENT**

Defendant open its opposition ("Opp") with the claim "this action belongs in federal court". This despite the fact it cannot cite a single case in the DC Circuit denying a motion to remand a §3905(k) action to DC Superior Court.

The defendant next claims that Plaintiff's contention that "Godiva, Belgium 1926" is simply an accurate statement of the place and year in which Godiva was founded". The Defendant however, declines to explain why its chocolates that are actually Belgium – i.e., made in Belgium - make that fact clear on the packaging, whereas its US made products make no mention of that anywhere. If the label truly imparted "no other message that Godiva's pride in its heritage and history", the defendant would cheerfully volunteer the place of origin of its US-made products in the same manner.

The defendant's arguments as to *forum non conveniens* are "somewhat" weakened by the fact that this court may undertake this procedure only when the action could have been brought in the "transferee" district. However, any DC consumer protection action must be brought initially in DC Superior Court. Therefore, this court may not apply *forum non conveniens* to this action.

Defendant's primary thrust on removal is that the number of plaintiffs is solely those who purchased the products made in the USA ("USA Products") in the District of Columbia. However, Defendant next sets forth the cost of a <u>nationwide</u> injunction. Any injunction obtained in this case would, through the New York case, or otherwise, run to the benefit of all purchasers of the product at issue nationwide. Defendant has not produced these numbers. Therefore, the defendant has failed to meet its burden of proof on this element.

In addition, Defendant assumes the cost of complying with an injunction must include the destruction of all existing inventory ▮▮▮▮ rather than sell it. Defendant falsely assumes an injunction would not permit it to sell existing inventory – the product is not contaminated or, like the cases cited in the opposition, that it must be destroyed (which involved products so falsely mislabeled they could not be resold). Instead, the anticipated motion for preliminary approval would permit the defendant to continue to sell its present inventory while the lengthy process of final approval takes place, generally six months. Other class actions have had similar provisions – with the disclosure to the public in the preliminary approval eliminating any further deception.

Finally, Defendant simply cites the high hourly rates assigned to contingency cases for a lawyer with the undersigned's experience as proof attorney's fees will be high. Defendant cites no case law in this regard, and fails to distinguish the multitude of cases that reject attorneys' fees as a basis for diversity jurisdiction

**II.    FACTS**

Plaintiff does not have major disputes with the facts of the case as set forth in defendant's Opposition. Further, the case law is not clear on whether the number of claims or plaintiffs is the number used as the denominator in calculating the cost of injunctive relief. Even using the ▮▮▮▮ of purchasers of the USA products over the last three years in the District of Columbia.

If, however, Defendant is going to posit it must use uniform packaging nationwide, the number of potential plaintiffs nationwide should be used.  Defendant has not provided this number.

As for the cost of injunction, the defendants primary cost – lost inventory, packaging, and "one-time lost sales", total ▮▮▮▮▮▮ [1] Opp at 3-4.  This figure is based on the critical assumption that should the plaintiff obtain an injunction, <u>all USA Products would have to be destroyed</u>, instead of sold.  As will be seen in the discussion below, this assumption is fundamentally inaccurate.

### III.   JURISDICTION DISCOVERY REVEALS THAT LESS THAT $75000 IS CONTROVERY WHEN THE AMOUNT IS CALCULATED ACCORDING TO ESTABLISHED CASE LAW.

1. This Action Could Not Be Commenced in the Southern District of New York. Therefore, it cannot be transferred there.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

However, any §3905(k) action must originally be brought in the District of Columbia. *See*, DC Code §28-3905 (k) (1) ("A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter <u>in the Superior Court of the District of Columbia</u> seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia."  (emphasis added) Therefore, this Court does not have the authority to transfer this case.[2]

### IV.   Removal is Not Property Because the Defendant improperly calculates the cost of an injunction

---

[1] Defendant also references ▮▮▮▮▮ in retooling costs, which plaintiff does not dispute would be incurred – however, the small number makes them irrelevant to the instant analysis.

[2] The undersigned is not addressing the issue of whether the court should (if in decides the case could be brought in New York), as it was raised in the defendant' July24th motion, the briefing of which has been stayed.

> A. *The District Of Columbia Circuit Shows A Preference For Using The Measure Of The Injunction To The Plaintiff Not To The Defendant.*

As noted in plaintiff's Motion to Remand (Mot) "several district court opinions from this Circuit that have considered this conflict in the context of cases brought under the DCCPPA on behalf of the general public seeking injunctive relief and have determined that considering the total cost to the Defendant of complying with that relief would violate the non-aggregation principle." *Animal Legal Defense Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 60 (D.D.C. 2017) at 60 (emphasis in original).

The concerns of the Animal Defense Court are particularly compelling here, where the Defendant assigns what it contends must be a nationwide effort of over ▓▓▓▓ in costs to a jurisdiction with about, according to the US Census Bureau,[3] .1% of the nation's population[4]. The "gamesmanship" associated with the costs of injunctive relief by defendants to gain access to federal court have recently been noted in the latest of the string of DC federal court cases remanding §3905(k)(1) actions back to DC Superior Court.  While the quote is not entirely apposite, it does capture the flavor of what the defendant is trying to do here:

> The Court also considers and rejects Defendant's warning that plaintiffs may attempt to avoid federal jurisdiction through the non-aggregation principle by making a request for injunctive relief on behalf of many people. . . . The Court finds that this risk of jurisdictional "gamesmanship" flows both ways. If the Court refused

---

[3] United States census data is an appropriate and frequent subject of judicial 572*572 notice. See United States v. Esquivel, 88 F.3d 722, 726-27 (9th Cir.1996); see also Bennett v. Board of Commissioners for East Jefferson Levee District, 2007 WL 2571942, *4-5 (E.D.La.2007) (using United States Census Bureau data in CAFA analysis); O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir.2007) (concluding that the failure to take judicial notice was an abuse of discretion when the party opposing judicial notice did not dispute its accuracy and did not request a hearing on the appropriateness of judicial notice); In re Sprint Nextel Corp., 593 F.3d 669, 675-76 (7th Cir.2010) (surveys

[4] According to the US Census Bureau, the US population is currently 329,804,752. https://www.census.gov/popclock/   . Further, the population of the District of Columbia is 601,723. https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml  (both sites last visited October 11th 2019).

>to apply the non-aggregation principle to the cost of complying with an injunction, then a plaintiff who was unable to meet the amount in controversy though damages could simply request injunctive relief in order to gain unmerited access to federal court. Absent the non-aggregation principle, the cost of injunctive relief would be more likely to meet the amount in controversy threshold as it would be measured by the total cost of the defendant's compliance . . . <u>The Court concludes that allowing unmerited access to federal courts in this way is the more serious risk because it is contrary to the longstanding directive that federal jurisdiction should be strictly interpreted</u> . . . . Accordingly, the Court follows the vast weight of authority in this Circuit and concludes that the non-aggregation principle should be applied to the cost of Defendant's compliance with an injunction.

*Hackman v. One Brands, LLC,* (D.D.C. 2019) at 5, Google Scholar pagination.

>    B. *The Cost of Complying With The Injunction Does Not Provide A Basis For Diversity Jurisdiction Because Such Cost Should Be Divided Among All Purchasers of USA Products in the United States And Because The Defendant Incorrectly Assumes A Necessary Prerequisite To Such An Injunction Is Destruction, As Opposed To Sale, Of Its Existing Product*

First, the defendant fails to consider that if the injunction must be complied with on a nationwide basis, then the costs should be divided among all purchasers in the United States over the last three years of the USA Products.  Second, the Defendant incorrectly assumes it would have to destroy all existing inventory in order to comply with the injunction

>    i.     *Assuming The "Cost To The Defendants" Approach Is Used, The Cost Should Be Divided Among All USA Products Sold In The Last Three Years In Not Just The District Of Columbia But All 50 States.*

The injunctive relief sought is for the District of Columbia only.  Courts viewing the cost of the injunction have looked only to the number of consumers in the District of Columbia. When a plaintiff seeks injunctive relief under the CCPPA, courts in this Circuit have regularly held that the amount in controversy for purposes of jurisdiction is the total cost of the injunction divided by the number of beneficiaries in the general public. See, e.g., *Animal Legal Defense Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 60 (D.D.C. 2017) ("the cost of compliance

that a court should consider when determining the amount in controversy in the total amount divided among the beneficiaries of the injunction"); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 171 (D.D.C. 2017) ("the cost of compliance must be divided among the beneficiaries of the injunction"); *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015) ("Defendants' argument—that this Court should consider their total compliance costs in calculating the amount in controversy—would circumvent the non-aggregation principle articulated in Snyder and Zahn").

The defendant's contention that it must make its packaging uniform nationwide (founded or not) simply means that the number of potential plaintiffs considered should be viewed as nationwide. As the defendant has not provided these numbers, this court should deny its motion.

    ii.    *The Defendant Incorrectly Assumes The Injunction Would Require It to Destroy, Not Sell, Its Existing USA Product*

Further, Godiva sets forth claims for the cost of injunctive relief as approximately . See page 3 above. Contrary to this apocalyptic scenario, the requests for injunctive relief, if properly structured, Godiva would not incur any of these costs.

Most notably, in a case such as this, where the product at issue is not inherently defective, but simply requiring additional disclosure, there is no public interest in forcing the defendant to destroy existing inventory. This issue has arisen may times in similar class actions. Many steps are taken by the courts, per the agreement of counsel, so that a "carve out" is made for existing inventory to be sold. Such would be consistent with the national announcement of the settlement agreement, which would give notice to the public that the old inventory was defectively labeled and in fact made in the United States (which would make any future class actions, if not barred by an injunction issued by the federal judge in New York, unworkable, as no consumer could claim ignorance of the fact the products were made in the USA) . Other remedies include:

      1.    As noted above, An injunction obtained by the plaintiff would mean the New York plaintiffs would obtain a similar injunction. In such cases, the New York federal judge would issue an injunction barring any additional lawsuits relating to the issue raised herein. Such takes the risk away from Godiva disposing of the existing inventory.

      2.    While the defendant may claim it can only make one package nationwide, the injunction in DC would only apple to products in DC. Thus, the DC Superior Court Justice could issue a stay of any additional representative and/or class actions as to the issues herein, meaning Godiva could still sell its inventory in the District of Columbia during the approval period (and as noted afterwards, due to the "carve out" for existing inventory

      3.    Even further, from the time to the initial announcement to the ultimate approval by the court (which can take typically six months or more), the entire issue of failure to disclose would be taken care of by the terms of the settlement agreement which will include a provision that the injunction is not to take effect until final approval.[5]

The cases cited by the Defendant involve product that, once the injunction was obtained, could not be resold because once the disclosure was made. These are cases where the injunction goes to the heart of the product – living condition and food for eggs sold in DC supermarkets, or fact that tobacco is not organic. In both cases, the parties apparently deemed corrective advertising campaigns were required, and the plaintiffs could not consistent with their claims, view current inventory as acceptable. *See*, *Organic Consumers Ass'n v. Handsome Brook Farm Grp.*, 2, LLC, 222 F. Supp. 3d 74, 77 (D.D.C. 2016) (destroying six weeks of inventory, branding and redesigning labels, corrective advertising campaign); ; *BREATHE DC v. Santa Fe Natural Tobacco Co.*, 232 F. Supp. 3d 163, 169 (D.D.C. 2017) (costs of injunction was loss of brand, costs of redesigning packaging, and cost of 'corrective advertising campaign')[6] In

---

[5] Note that a settlement or final judgement would result in the resolution of the New York Case. The New York Judge could issue as part of the approval of the preliminary approval a national injunction barring any further class actions until Final Judgment is either approved or not.

[6] The theory of this case is that consumers might pay a lower price for the defendant's products if defendant disclosed their USA origin. As defendant has not submitted any information on this point, it has failed to meet the burden of remand on this theory. As is noted elsewhere, the undersigned questions whether simple disclosure of the

7

contrast, as explained above, any injunction would be accompanied by a proposal that the Defendant be able to sell its existing inventory

The case law is replete with courts expressing considerable skepticism as to the claims of the cost of injunctive relief by defendants, with such skepticism based on the view that these claims are made for the express purposes of obtaining federal jurisdiction. See, e.g., *Nat'l Consumers League*, 680 F.Supp.2d at 140 (holding that defendant's claim that the cost of injunctive relief would exceed $75,000 was "too speculative"); *Wexler v. United Air Lines, Inc.*, 496 F.Supp.2d 150, 154 (D.D.C.2007) (finding defendant's claim that "the total cost `is certain' to exceed $75,000" insufficient to establish jurisdiction); accord, *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977) (holding that injunctive relief does not meet the amount in controversy when the "only reason the injunction is worth more than [the jurisdictional minimum]" is that it would affect defendant's future sales).

As this court noted in *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 302 (D.D.C. 2013) "it is improper to consider a decrease in future revenue as a cost of complying with an injunction" because it is too speculative, *citing Snow v. Ford Motor Co.,* above, at 790.

Courts are properly suspicious of defendants speculating (with the suspicion they are inflating) the cost of complying with an injunction.  See also *Breathe D.C.*, cite 232 F. Supp. 3d at 169 (citing loss of "brand value" as improper metric).

This court's reasoning in *Zuckman* was recently reiterated in *Hackman v. One Brands LLC,* Civil Action No. 18-2101 (D.D.C. April 1 2019) at 2[7] ("Assuming that Defendant's

---

truth constitutes a "cost".
[7] Pagination is that of Google Scholar.

estimates of either $1,082,500 or $130,000 are accurate costs of compliance, Defendant has failed to establish that it meets the amount in controversy requirement").

>   C.  *The Actual Or Statutory Damages And Attorneys Fees Do Not Further The Argument As To The Amount In Controversy.*

>    >   a.  *The Claim For Statutory Damages Does Not Provide This Court With A Basis For Diversity Jurisdiction*

Godiva contends in heading D (Opp at page 17) that statutory damages could provide a basis for diversity jurisdiction. However, the defendant does not further develop this argument. *Id.*

>    >   b.  *The Claim For Attorneys Fees Does Not Provide This Court With A Basis For Diversity Jurisdiction*

The defendant's claim that attorneys fees offers the sole fact that the undersigned, if submitting a fee petition, will use the *Laffey* Matrix to bill at $613 an hour. Therefore, Godiva expects any request for attorney's fees to be to be "significant". Opp at 17.

Not surprising, the defendant cites no case law to support it claims, as unbroken line of cases have rejected attorneys' fees as a basis for keeping a §3905(k) action in federal court. See *Hackman* Court , rejecting the defendant's efforts to aggregate attorney's fees to obtain diversity jurisdiction. Id at *3, *citing Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 107 (D.D.C. 2008) ("the non-aggregation principle logically should extend to claims of attorneys' fees").

**CONCLUSION**

For the above reasons, this Court should remand this case to DC Superior Court.

>                                        Respectfully Submitted

*/s/*
Thomas C. Willcox
1701 16th Street, NW
211
Washington DC
DC Bar No 445135
202 338.0818
Mobile 202.617.4210
Tcw19law@gmail.com